(40 Misc. Rep. 372.)
PEOPLE ex rel. CLAPP v. LISTMAN, Commissioner of Public Safety.

(Supreme Court, Special Term, Onondaga County.  March, 1903.)

1. MANDAMUS—ENFORCEMENT OF LAWS.
Mandamus will not lie to compel the commissioner of public safety of a city of the second class to enforce the Sunday laws.

Application by the people, on the relation of T. Eaton Clapp, against Charles Listman, commissioner of public safety of the city of Syracuse, commanding the defendant to enforce laws prohibiting the employment on Sunday of all labor except that of necessity and charity, and prohibiting public exercises and dramatic performances.  Writ denied.

Newell, Chapman & Newell, for relator.
A. H. Cowie, Corp. Counsel, for defendant.

ANDREWS, J.  The papers upon which the relator makes this application show that the defendant is commissioner of public safety of the city of Syracuse, and as such is the executive head of the police department of that city.  It is his duty to see to it that the laws of the state are enforced within the limits of his territorial jurisdiction. They further show that there are within the city of Syracuse certain public theaters, in which there have been given on Sunday evenings so-called "sacred concerts," to which admission has been charged, and that these concerts have necessitated the employment upon that day of labor.  These concerts are not sacred in any sense.  In reality they are dramatic performances, and constitute public exercises and shows within the meaning of the statute.  They are, therefore, prohibited by the Penal Code.  Nevertheless, it is the intention of their managers to continue them in the future.  The attention of the defendant was called to these entertainments by a formal written complaint, and a demand was made that he use his power as head of the police department to put an end to them.  He then caused two officers to attend a concert at the Bastable Theater on Sunday evening, January 11th.  Upon their report the matter was presented on Monday morning to the police justice of the city of Syracuse, who refused to issue any warrants for the arrest of the persons responsible for such concert on the ground that the same did not constitute a violation of law.  As the alleged offense was a misdemeanor, the commissioner, in the absence of a warrant, had no power to cause any arrests to be then made, and he stated that he could not and would not do more than had already been done.  Upon these facts the relator makes this application, his object being practically to obtain a mandamus from this court which shall require the defendant to attend personally, or to cause his officers to attend, such concerts as may be given in the future, and to arrest, or to cause the arrest, without a warrant, of persons holding such concerts, if the same shall be found to offend against the provisions of the Penal Code.

The answering affidavits of the defendant dispute none of these facts, but do state that he is and has been ready to enforce the laws

¶ 1. See Mandamus, vol. 33, Cent. Dig. § 143.

of the state. This claim, however, seems inconsistent with the admissions of his counsel, made on the argument of this motion, that these so-called concerts are illegal. If they are, it is plainly his duty to act. In view of this admission, and in view of the facts alleged and not denied in the papers before me, I shall, for the purposes of this decision, assume that the acts complained of are prohibited by the Penal Code. I shall also assume, without expressly so holding, however, that it is sought to compel a purely ministerial act on the part of the commissioner.

It may be well to determine in the first instance what other means may be employed by the relator to compel the enforcement of the criminal laws of the state in relation to the observance of Sunday. It is open to him to make a complaint before the grand jury. He may lay an information before the police justice of the city of Syracuse, and, if that justice is satisfied that the crime complained of has been committed, and there is reasonable ground to believe that the defendant has committed it, he must issue a warrant of arrest. Code Cr. Proc. § 150. If the police justice willfully and improperly refuses to do his duty in the matter, he may be removed by the appellate division of the Supreme Court. Const. art. 6, § 17; Code Cr. Proc. § 132. The information may be laid not only before a police justice, but before any justice of the Supreme Court, the county judge, or the mayor of the city. Code Cr. Proc. § 147. If the crime is committed in the presence of the relator, he may himself arrest the criminal, and take him before a magistrate, or deliver him to a peace officer. Code Cr. Proc. §§ 183, 185. If the alleged crime is committed in the presence of a policeman, he may arrest, without a warrant, the person so committing it (Code Cr. Proc. § 177); and it is his duty to do so, and to take him before the proper city magistrate, to be dealt with in the same manner as if such person had been arrested upon a warrant theretofore duly issued by such magistrate. Charter Cities Second Class, Laws 1898, p. 398, c. 182, § 181. If such policeman fails to do his duty, a written charge may be made against him, and it then becomes the duty of the police commissioner to hear, try, and determine the charge according to the rules of the police department, and he is given the power to inflict suitable punishment. Id. p. 398, § 184. The commissioner himself has general charge of the police department, and to him is intrusted general supervision over the enforcement of the statutes of the state within the city boundaries. Id. p. 396, § 174. With or without charges the commissioner may be removed by the mayor. Id. p. 379, § 49. Upon the mayor himself is imposed the duty of seeing that the city officers faithfully perform their duties, and of maintaining peace and good order within the city and of taking care that the laws of the state are enforced therein. It is his duty to receive and examine all complaints made against any city officer for neglect of duty. Id. p. 378, § 46. If any of the officers of the city, from the mayor downward, willfully neglect to perform their duty, they are guilty of a misdemeanor, and may be proceeded against in the criminal courts. Pen Code, §§ 118, 154, 471.

It has been said that mandamus may be called the spur by which municipal officers are moved to the performance of their duty. When

a plain and imperative duty is specifically imposed upon such officers, so that in its performance they act merely in a ministerial capacity without being called upon to exercise their own judgment as to whether the duty shall or shall not be performed, the writ of mandamus may be used to set them in motion. It is also true that, while the existence of an adequate and specific remedy by the ordinary process of the courts constitutes a sufficient bar to interference by mandamus, a mere statutory penalty against the officer for failure to perform an official duty, or the existence of a remedy by indictment for the omission of such duty, constitutes no objection to the granting of the writ. The existence, therefore, of the numerous methods described above, by which the relator can obtain his object without application to the Supreme Court, is, in itself, no sufficient answer to such an application. But, after all, the writ of mandamus is an extraordinary remedy, and whether it shall or shall not be granted in a specified case rests largely in the sound discretion of the court. There is no doubt that there are circumstances where such a power may be wisely exercised. It might well be that cases might arise where the neglect of the municipal officer is so flagrant, where the wrong is of so grave a character, and where the public interests involved are so important, that the court will not hesitate to resort to this remedy. But it should be used with caution. Ordinarily, it is far better that the usual course should be pursued. The interference of the Supreme Court with the details of municipal administration is not to be encouraged. These details are intrusted by the people to officers chosen directly or indirectly by themselves. These officers are criminally responsible for a willful neglect of their duties, and upon them the responsibility for the government of our cities should usually be allowed to rest. The Supreme Court is not so organized as to enable it conveniently to assume a general supervisory power over their acts; and, indeed, such an assumption by it would be contrary to the whole spirit and intent of our government. And yet, if the application of the relator is granted, it is difficult to see where the line is to be drawn. Every person aggrieved by the breach of any law or ordinance will attempt to secure its enforcement by mandamus, rather than by the methods pointed out by the Code of Criminal Procedure. There is, for instance, an ordinance in the city of Syracuse against the use of the sidewalks by bicycles. It is habitually broken. Should the Supreme Court compel the enforcement of this ordinance by the use of its writ? I use this illustration not to belittle the gravity of the offense pointed out by the relator, but to show the inevitable and logical result of such action as he desires. As was said before, there may be times when the power of the court should be used. This power is undoubted and unquestionable, and it may be invoked by any citizen. But it should be reserved for extreme cases. It does not seem to me that this is one of them.

Attention is called to the action of this court in People ex rel. Gallagher v. Duncan W. Peck, as Commissioner of Public Safety of the city of Syracuse. In that case an application was made to compel the defendant to enforce the laws of the state with regard to ball-playing on Sunday. The affidavits of the relator showed that the de-

fendant had failed to enforce such law, that such failure was intentional on his part, and resulted from a design to allow the law to be systematically violated. The court there held that it had the power, upon the application of any citizen of the state, to compel the defendant by mandamus to perform his duty. An issue of fact, however, was raised by the defendant, who stated that he had in good faith attempted to carry out the law in the past, and that he would do so in the future. An alternative writ of mandamus was thereupon granted. Whether, in that instance, with all of the evidence before it, the court would or would not have granted the peremptory writ of mandamus, was not determined. The application of the relator is denied, with $10 costs.

Application denied, with $10 costs.