In the Matter of the Application of the INTERNATIONAL RAILWAY COMPANY, Respondent, for a Peremptory Mandamus Order Directed against FRANK X. SCHWAB, as Mayor and Commissioner of Public Safety of the City of Buffalo, Appellant.

Fourth Department, October 19, 1922.

Municipal   corporations — mandamus — peremptory   order   directing mayor of Buffalo to enforce certain statutes relating to motor vehicles reversed — operation of jitney busses in violation of statutes — duty of mayor to enforce statutes — order not sufficiently specific and was unwarranted interference with executive power of mayor — permitting others to ride not unlawful jitney service — failure to join other members of council in proceeding not valid objection.

A peremptory mandamus order directing the mayor and commissioner of public safety of the city of Buffalo (both offices being held by one person) to enforce " by all lawful means within your power " sections 25 and 26 of the Transportation Corporations Law, section 29 of the Penal Law with respect to motor vehicles

carrying passengers for hire, and sections 282, 282b and 289 of the Highway Law, should be reversed, although it appears that at the time of the granting of the order said statutes were in fact being violated by drivers of jitney busses, and the city charter made it the duty of the mayor and other members of the council, but particularly the mayor, to enforce said statutes, as a mandamus order should specify the acts to be done with precision, and a general direction to enforce a certain statute without pointing out specifically what is to be done is insufficient; moreover, the order was an unwarranted interference with the executive power of the mayor.

*It seems,* that the mere fact that an automobile owner or driver permits others to ride in his vehicle is not unlawful jitney service.

Failure to join other members of the council in the mandamus proceeding is not a valid objection; especially in view of the fact that no such objection was raised at Special Term in any way.

CLARK, J., dissents.

APPEAL by the defendant, Frank X. Schwab, from a peremptory mandamus order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on or about the 7th day of August, 1922, directing the defendant to enforce certain provisions of the Transportation Corporations Law, the Penal Law and the Highway Law.

*William S. Rann, Corporation Counsel [Frederic C. Rupp* of counsel], for the appellant.

*Penney, Killeen & Nye [James C. Sweeney* of counsel], for the respondent.

KRUSE, P. J.:

The relator operates a street car system in the city of Buffalo. On the morning of July second last it ceased to operate cars owing to a strike of its employees, and no car was operated for eight days thereafter. When the street car service stopped, numerous vehicles appeared upon the streets for transporting the people. Thereupon the mayor improvised, as he says, a system to regulate such transportation and to maintain order and protect the life of the traveling public and prevent extortion by the operators of such vehicles; and to that end he issued to each driver of such vehicles a card like this: "Permit No. 46, Fare 10 cents," each card bearing a different number, and required the driver to promise not to charge over ten cents and follow such rules and regulations as might be laid down by the city and comply in all respects with the law of the State and the United States in the operation of such vehicles. Men were employed by the city for the purpose of regulating traffic and vehicles were routed along certain designated routes. The mayor further says that it became absolutely necessary to regulate such transportation. He further says that it was impossible for him to determine whether each and every driver

of the vehicles had complied with every provision of the Public Service Commission Law and the Highway Law.

The mayor communicated to the council of the city what he had done and recommended that the council give its consent to operate such vehicles and thereupon, after notice of public hearing upon that question, the council passed a resolution giving the consent of the city to all such persons to whom the mayor had given permits to operate motor busses for public use for the conveyance of persons along the streets of the city for a period of three weeks or until normal service was resumed by the relator, imposing as a condition a maximum fare of not exceeding ten cents for one continuous passage for each passenger and providing that the consent was a mere license revokable at any time by the council and requiring such persons to comply with the laws of the State and ordinances of the city. Application was also made to the Public Service Commission for a certificate of public convenience and necessity, but no such certificate had been obtained at the time of granting the order from which this appeal has been taken and none has been granted up to this time, so it is conceded.

The relator contends that the mayor has been derelict in his duties in failing to enforce the law against unlawful jitney service and protect it from unlawful competition. This the mayor denies and contends that the relator arbitrarily and without reason brought on a conflict between it and its employees and that he has only done what is necessary to regulate the jitney service which was brought about through the failure of the relator to operate its cars.

It is unimportant what brought about the failure to operate cars. Concededly, for several days they were not run.

After the street car service was resumed jitney service was continued and thereupon this application for the mandamus order was made. While the sworn statements of the defendant and his corroborating affidavit so far as material must be taken as true since the mandamus order is peremptory and not alternative in form, I think it clearly appears that many of these vehicles were operated in violation of law, and such violation has been held to be a misdemeanor under section 29 of the Penal Law. (*People ex rel. Weatherwax* v. *Watt*, 115 Misc. Rep. 120; affd., 197 App. Div. 929.) But the mere fact that an automobile owner or driver permits others to ride in his vehicle is not unlawful jitney service. Section 26 of the Transportation Corporations Law* provides: "No bus line, stage route nor motor vehicle line or route, nor any vehicle in connection therewith, nor any vehicles carrying passengers

---

* See foot note *post,* p. 72.— [REP.

at a rate of fare of fifteen cents or less for each passenger within the limits of a city or in competition with another common carrier which is required by law to obtain the consent of the local authorities of said city to operate over the streets thereof shall be operated wholly or partly upon or along any street, avenue or public place in any city, nor receive a certificate of public convenience and necessity until the owner or owners thereof shall have procured, after public notice and a hearing, the consent of the local authorities of said city, as defined by the Railroad Law, to such operation, upon such terms and conditions as said local authorities may prescribe." The section further provides that the local authorities may require the owner or operator of the vehicle to give a bond to protect the city as well as any person sustaining damages on account of the operation of such line or route or any fault in respect thereto. And sections 282b and 289 of the Highway Law* contain provisions for licensing chauffeurs, and for giving bonds by persons engaged in carrying passengers for hire in motor vehicles.

Section 49 of the former Buffalo City Charter (Laws of 1891, chap. 105) made it the duty of the mayor to maintain peace and good order within the city and to enforce the laws, but section 40 of the present Charter of the City of Buffalo (Laws of 1914, chap. 217) imposes upon the council all the power theretofore imposed upon the mayor and it is, therefore, argued that this responsibility rests upon the council as a whole and not upon one member. I think this duty in general rests upon every member of the council and peculiarly upon the mayor. The present charter (§ 41; § 42, as amd. by Laws of 1919, chap. 18; § 250 *et seq.* as amd.) provides for a department of public safety which through its subordinate department of police has charge of all police matters, and the defendant is the acting head of this department. The mere fact that the other members of the council have not been joined in this proceeding is not a valid objection, especially in view of the fact that no such objection was raised by the answer or at Special Term in any way. It is further contended that mandamus will not lie to enforce performance of official duties generally, that the requirements of the order are too broad and not sufficiently specific. The order requires the mayor to enforce " by all lawful means within your power " sections 25 and 26 of the Transportation Corporations Law and section 29 of the Penal Law with respect to the operation within the city of " motor vehicles carrying passengers at a rate of fifteen cents, or less, for each passenger, or in competition with this petitioner " and the provisions of sections 282, 282b and

---

* See foot note *post*, p. 72.— [REP.

289 of the Highway Law.*  It does not direct what specific act the mayor shall do to enforce the same further than to command the police officers, if necessary to the enforcement of the provisions contained in such sections, to arrest and prosecute all persons violating the same within the city.  Whether such arrest is to be made with or without a warrant and what is to be done by the police to prosecute such offenders is not stated.  It does not direct the mayor to recall the permits and to desist from routeing these vehicles, but he has done so as was conceded upon the argument.  The mayor insists that he and the police of the city have done what they could to protect the relator from unlawful jitney service besides protecting its property and operation of its cars, and says that it has required the whole police system of the city and many police officers to protect the property and people of the city from injury, and that the relator has received the service of many hundreds of police officers, and points to the fact that the relator itself up to the time of making this application took no proceedings, either civil or criminal, against the operators of these vehicles which it claims were unlawfully on the street, but attempts to put this entire burden upon the defendant city.  However that may be, I am of opinion that this order in the form in which it was granted should not be sustained.  Nor do I see how it can be modified by directing the mayor to do any specific act.  None has been pointed out by the learned counsel for the petitioner.  He contends that a general order to enforce these sections is sufficient. No one would seriously claim that the mayor should use the entire police force to protect the petitioner from unlawful competition, and yet the order requires him by all lawful means within his power to enforce these provisions of the law.  Who is to determine how many policemen shall be detailed for this service and what vehicles are being operated contrary to law?  While an arrest may be made by a peace officer or even a private person for a misdemeanor committed or attempted in his presence (Code Crim. Proc. §§ 177, 183), it may not be so clear that an actual offender is a competitor of the petitioner or carrying passengers at the rate of fifteen cents or less or in any other way operating a vehicle contrary to the provisions of the sections of the law directed to

---

* See Transportation Corporations Law, § 25, added by Laws of 1913, chap. 495, as amd. by Laws of 1915, chap. 667; Id. § 26, added by Laws of 1915, chap. 667, as amd. by Laws of 1919, chap. 307; Penal Law, § 29; Highway Law, § 282, added by Laws of 1910, chap. 374, as amd. by Laws 1921, chap. 580, and Laws of 1922, chap. 372; Id. § 282b, as added by Laws of 1922, chap. 612; Id. § 289, added by Laws of 1910, chap. 374, as amd. by Laws of 1921, chap. 580, and Laws of 1922, chap. 17.  See, also, Laws of 1922, chaps. 535, 536, amdg. said § 282.— [Rep.

be enforced.   A mandamus order should specify the acts to be done with precision.   As was said by Chief Judge EARL in *People ex rel. Hasbrouck* v. *Supervisors* (135 N. Y. 522): "When a writ of peremptory mandamus issues, all judicial action has ceased, and the party commanded is bound to obey, and in default thereof he may be punished.   He has no discretion to perform part of the acts commanded and to omit others; but he must obey the writ in the terms in which it was issued.   The writ must command precisely what the party is required to do, and no more than he is legally bound to do."

In *People ex rel. Bartlett* v. *Dunne* (219 Ill. 346), which was an application made to the Supreme Court of Illinois for a mandamus to compel the mayor to proceed and persistently continue to enforce the statute against keeping open saloons on Sunday and compel general observance of the provisions of such law and prevent violation of them and secure prosecution of every person violating the law, Chief Justice CARTWRIGHT in writing for that court denying the application for leave to file a petition for a mandamus said: "The remedy by mandamus is one which is allowed to compel the performance of some duty owing to an individual or to the public.   The duty must be specific in its nature, and of such character that the court can prescribe a definite act or series of acts which will constitute a performance of the duty, so that the respondent may know what he is obliged to do and may do the act required, and the court may know that the act has been performed and may enforce its performance.   It is not necessary, in all cases, that the performance of the duty should consist of a single act.   It may be a succession of acts, if the duty is specific and the acts are of such a nature that the court can supervise the performance of the duty and the execution of the mandate.   For example, the court may require a railroad company to re-lay a portion of its track which has been taken up, and operate it; to operate its railway as a continuous line; to deliver freight to a certain elevator; to run a daily passenger train for the accommodation of passengers over its road in place of a mixed stock and passenger train, or to stop all its passenger trains at a certain station; but the writ has never been made use of, and does not lie, in this State at least, for the purpose of enforcing the performance of duties generally.   It will not lie where the court would have to control and regulate a general course of official conduct and enforce the performance of official duties generally.   In such a case the court could not prescribe the particular act to be performed and enforce its performance."

A general direction to enforce a certain statute without pointing

out specifically what is to be done is insufficient. Such a direction is no more effective than the statute itself. (*State ex rel. Hawse v. Brewer*, 39 Wash. 65.) Furthermore, mandamus is an extraordinary remedy and the judiciary is loathe to interfere with the executive department of the government in the exercise of its official duties, unless some specific act or thing which the law requires to be done has been omitted. As was said by Mr. Justice ANDREWS, now judge of the Court of Appeals, in *People ex rel. Clapp* v. *Listman* (40 Misc. Rep. 372), in his opinion which was adopted by this court in affirming his order (84 App. Div. 633): " Ordinarily it is far better that the usual course should be pursued. The interference of the Supreme Court with the details of municipal administration is not to be encouraged. These details are entrusted by the people to officers chosen directly or indirectly by themselves. These officers are criminally responsible for a willful neglect of their duties, and upon them the responsibility for the government of our cities should usually be allowed to rest. The Supreme Court is not so organized as to enable it conveniently to assume a general supervisory power over their acts; and, indeed, such an assumption by it would be contrary to the whole spirit and intent of our government."

I am of the opinion that the order is an unwarranted interference in details of executive power, and that in the exercise of judicial discretion the application should have been denied as was done by the Appellate Division in *People ex rel. Judge* v. *Hylan* (200 App. Div. 430) and in *People ex rel. Clapp* v. *Listman* (*supra*) by this department, and that in any event the order should not be sustained in its present form and I am unable to see how it can be modified upon the record before us by directing any specific act to be done with the possible exception of the withdrawal and cancellation of the permits which, concededly, has been done, although not specifically required by the order. I am, therefore, of the opinion that the order should be reversed, with costs, and the motion denied.

All concur, except CLARK, J., who dissents upon the authority of *People ex rel. Weatherwax* v. *Watt* (115 Misc. Rep. 120; affd. 197 App. Div. 929).

Order reversed, with costs, and motion denied.