Matthew M. Levy, J.
This is a proceeding in the nature of a mandamus, pursuant to article 78 of the Civil Practice Act, to compel the Board of Education of the City of New York to process and audit certain vouchers submitted by the petitioners, and to require the Comptroller of the City of New York to issue and deliver to the petitioners a warrant for the payment of moneys claimed to be due them for work, labor, services and materials furnished to the board under a building contract between the board and the petitioners.
There is no substantial dispute as to the facts. The contract was entered into on August 9, 1957, and the work was begun. On September 18, 1957., as permitted by the terms of the contract, the board ordered the discontinuance of the work and directed the forwarding by the petitioners of vouchers for final payment. The petitioners submitted their final vouchers on or about December 18, 1957. Thereafter, also as provided in the contract, the petitioners were directed to submit bills for work performed so that, ostensibly, a final evaluation would be made by the board as to any sums that might be due and owing to the petitioners. The petitioners promptly complied.
Then something appears to have occurred which is inexplicable. The petitioners allege that, after communicating with the Administrator of Business Affairs of the Board of Education, and after receiving assurances from him that the final filed invoices were in order, the board refused, without apparent reason or explanation, to process the invoices for final payment, and the Administrator suggested that the petitioners file a claim with the Comptroller’s office in order to obtain such final payment. On July 24, 1958 a notice of claim was filed with the Comptroller. Due preliminary examination of the petitioners was had thereon (see Quinn v. City of New York, 25 Misc 2d 116). No action appears to have been taken thereafter on the petitioners’ claim by the Comptroller or the board.
About February 27, 1959 the petitioners instituted the instant proceeding. As of that time nothing further had been done. In fact, as laic as October, 1959, when this matter was finally submitted to the court, nothing, apparently, had been done to *296 process the petitioners’ claim. And, now, after the lapse of several months, I am informed that the matter has remained in statu quo, that is, in limbo.
The issue — and the just and necessary conclusion — are aptly and succinctly stated by the petitioners in their brief:
“It is important to emphasize that the petitioner seeks to have the Board audit the claim and perhaps it may turn out that the Board has just reason or reasons not to make payment; but if these reasons are valid in that they raise an area of justifiable dispute, then perhaps the petitioner would and should be relegated to his action at law. However, at the present status of this case, that point has not been reached and what the petitioner seeks under this application is to have the Board act.
“ To make the petitioner’s point perfectly clear, he does not ask the court to have the Board find [in] the petitioner’s favor, ipso facto, but to have the Board audit the petitioner’s claim, unless, of course, the Board concedes upon the hearing of this application the absolute correctness of the petitioner’s position [,] in which event the court should compel the Board to issue its warrant for immediate payment.”
Although it is undisputed that the petitioners have filed all the required papers and presented all the requested proof— which necessarily results in the conclusion that all that is left for the board to do is to examine them and to audit the claim — the board submits to me, in response to the petition, an affidavit of its Administrator to the effect that “ there is no ministerial act to be performed by any member of the Board under the facts set forth in this petition. It is hardly necessary to point out to the learned Court that the remedy of this petitioner is by a claim to the Comptroller and if petitioner’s terms are not met, then its remedy is by an action at law.” And, the Corporation Counsel submits to me a brief on behalf of the respondents, in which he states: “ Here the Board of Education has requested the petitioner to submit bills and vouchers for work performed under the contract, and the petitioner has now done so. It now becomes the duty of the Board of Education to audit and determine whether or not any sums are due to the petitioner. The Board has done this and has not acted in an arbitrary or capricious manner. ’ ’ (Emphasis mine.)
It appears from the documents filed with me that the board has in fact not done this. From the two quoted paragraphs, taken together, it is obvious that the respondents are engaged in a play on words, and that the petitioners are being put to extraordinary difficulty and undue delay to obtain what is their just due without question — an administrative determination as *297 to the amount, if any, due to them under the contract. The petitioners are entitled to a prompt and definite audit, and they shall have it. Whether they are entitled, in the present state of the record, to a judicial direction for payment is another matter — and I conclude that they are not.
In People ex rel. Thurston v. Board of Town Auditors (82 N. Y. 80, 83) the Court of Appeals, in sustaining a mandamus to compel the conduct of an audit without deciding what the resulting amount should be, said: ‘ ‘ The courts may not dictate their [the respondent board’s] conclusion, but may justly require that they arrive at one in a just and intelligent way ”. In Matter of Obelisk Waterproofing Co. v. Cloher (111 Misc. 1, 3) the court held that a public officer invested with auditing powers has no right arbitrarily to refuse an audit, and where, upon the conceded facts, it is his duty to make such audit, the performance of his responsibility in that regard is of a ministerial character. In Davis v. Sharp (30 N. Y. S. 2d 441, 444, mod. on another issue and affd. 265 App. Div. 825), where a Town Board had a certain power and duty to pass upon an item in the estimate for the annual budget, and failed to do so, Mr. Justice Cuff appositely said: “It is the Board’s duty to act one way or the other. Affirm or disapprove the item, but act thereon the members must. The court has not the power to direct the Board to act favorably or unfavorably upon this proposal. It has however the power to and does direct the Board to take affirmative or negative action. That is the duty of the Board members. It must be performed. ’ ’
In New York Catholic Protectory v. Rockland County (212 N. Y. 311) the court drew the distinction between a case where the public body refuses to audit a claim and where it disallows the claim. The court said (p. 314): “ The plaintiff relies upon the case of Kennedy v. County of Queens [47 App. Div. 250] (supra). That was an action on a contract which the complaint alleged the board of supervisors had by resolution refused to recognize. Such refusal was equivalent to a refusal to audit, which is very different from an audit and disallowance of a claim. Doubtless a person having a claim against a county may either sue directly upon it or present it to the board of supervisors for audit. If the latter course is pursued and the board of supervisors refuse to audit it, two courses are still open, one to compel an audit by mandamus (People ex rel. Thurston v. Town Auditors of Elmira, 82 N. Y. 80), the other to bring an action directly against the county.”
In directing (as I do) that the board act in this case, one way or the other, I do not conceive that there is any ‘ ‘ interference *298 of the Supreme Court with the details of municipal administration ”, for I recognize quite well that the “ ‘ Court is not so organized as to enable it conveniently to assume a general supervisory power over their acts; and, indeed, [that] such an assumption by it would be contrary to the whole spirit and intent of our government. ’ ” (Matter of Walsh v. La Guardia, 269 N. Y. 437, 442, quoting from People ex rel. Clapp v. Listman, 40 Misc. 372, 375-376.) But it is well settled that the Board of Education has the right and duty to audit (Matter of Brennan v. Board of Educ., 245 N. Y. 8), and that, in “ the absence of illegality, fraud or manifest mathematical error, the audit of the Board of Education prevails. Unless some of these infirmities are present in the audit, the Comptroller is without authority to review it ”. (Matter of Wilaka Constr. Co. v. McAneny, 265 N. Y. 43, 45.)
The granting of an order of mandamus rests largely in the discretion of the court (Matter of Coombs v. Edwards, 280 N. Y. 361). Were I to deny this motion in toto, I believe that I, too, would not be properly exercising the discretion that it is my duty to employ. For, if this application were, as to the Board of Education, rejected, it would mean that the petitioners would be required to proceed by way of a plenary action. There is, at this time, no reasonable basis to compel the petitioners to resort to that remedy, with the problems and delays incident thereto. Since the commencement of this proceeding, at. the least, it would seem that the respondent board has had sufficient time to complete an audit, and to make a determination to pay or not to pay. It has failed to do so. It is apparent from the undisputed facts that there is either unwillingness to act or undue delay herein upon the part of the board, resulting in the imposition of additional burdens not alone upon the petitioners and the board, but upon the court now and perhaps later.
The motion is granted to the extent of directing the board to audit the vouchers. No further compulsion at this time is appropriate. It is hoped that the audit will be promptly completed and that there will be no need for further judicial directives. And, since hope springs eternal, I add that it may even be that an audit, without more, may accomplish the just result. Settle order.