Joseph A. Sarafite, J.
In this special proceeding, petitioner landlord seeks an order in the nature of mandamus directing respondent, the City Rent and Rehabilitation Administrator (1) to schedule a public hearing for the purpose of considering the issuance of an order abolishing rent and eviction controls within the City of New York and (2) to issue — upon conclusion of that hearing — an order of decontrol.
In this connection petitioner seeks to compel the respondent to comply with the provisions of section Y51-12.0 of the Administrative Code of the City of New York. The statute as recently amended (Local Laws, 1967, No. 60 of City of New York), provides in pertinent part as follows: ‘1 Decontrol on basis of vacancy rate.— Whenever the city rent agency shall find, after making such studies and investigations as it deems necessary for such purpose * * * that the percentage of vacancies in all or any particular class of housing accommodations in the city, as such class is determined by the city rent agency, is five per centum or more, the controls imposed on rents and evictions by and pursuant to this title, with respect to the housing accommodations as to which such finding has been made, shall be forthwith scheduled for orderly decontrol * * * by order of such agency; provided, however, that notwithstanding any provision of this section to the contrary, such agency shall not order the decontrol of any particular class of housing accommodations as to which it shall find that the percentage of vacancies is less than five per centum; provided, further, that no such order shall be made unless such agency shall hold a public hearing on such proposal at which interested persons are given a reasonable opportunity to be heard.”
Petitioner contends that two recent studies — one conducted and prepared by the United States Bureau of the Census pursuant to a contract with the rent agency, and another, by Dr. Chester Rapkin, a nationally known housing expert, analy *101 zing the Census Bureau’s report — disclose that “there is a current rate of vacancy in residential housing in the City of New York in excess of five percentum.” (In fact, said reports concluded that the existing vacancy rate was less than 5%.) It is claimed that despite the fact that the substance of these studies and supporting data were made known.to respondent, he, nevertheless, failed and refused to schedule or otherwise hold — as, contends the petitioner, the statute requires — a public hearing ‘ ‘ preparatory and antecedent to the issuance of an order ” of decontrol. Notwithstanding this statutory obligation, it is argued, respondent advised the Mayor of the City of New York that the vacancy rate was below the statutory limit of 5%; and further, that this action culminated in the passage of a resolution by the City Council in March, 1967 extending rent controls for two years.
Essentially, petitioner claims that the Bureau of the Census and Dr. Rapkin and respondent all erroneously excluded from their computations a category of housing units denominated as “ unavailable ” vacancies which, if otherwise included, would have brought the vacancy rate figure to over 5%.
Petitioner urges that the provisions of the statute mandated respondent to take “independent and non-delegable action” as the facts warranted it and that he may not avoid this duty by asserting that the City Council’s “finding concerning the putative housing emergency ” has stripped him of that power.
Respondent, on the other hand, contends that the petitioner misreads the studies — heretofore cited — by referring incorrectly in his petition to the gross vacancy rate of 5.14% as the key figure in determining whether there is a housing* shortage. Respondent argues that the central factor in such determination is not the gross vacancy rate but rather the net vacancy rate which — it is undisputed — is 3.19%. Hence, respondent urges — and the court agrees — the only issue in this proceeding is whether or not respondent properly interpreted the vacancy rate figures as set forth in the studies.
In support of his contention that he adopted the proper vacancy rate, respondent argues that all rent administrators before him and previous legislative bodies and the Court of Appeals have likewise accepted the net rental vacancy rate as the proper factor in determining the existence of a housing shortage. Moreover, respondent contends that the City Council— at its hearing’s in March, 1967 — considered and rejected all of the arguments, now presented by petitioner, indorsed the net rental vacancy rate and passed their resolution extending rent controls. The action by the Council, it is argued, by *102 validating respondent’s finding, precludes the existence of any justiciable question to be resolved in this proceeding. The court shares this view.
At the outset, it is observed that the issue presently before the court was indeed raised and considered in Amsterdam-Manhattan, Inc. v. City Rent & Rehabilitation Admimstration (43 Misc 2d 889, affd. 21 A D 2d 965, affd. 15 N Y 2d 1014). There, the petitioner sought to declare the New York City Rent and Rehabilitation Law (Local Laws, 1962, No. 20 of City of New York) as unconstitutional. There — as here — the Rent Administrator submitted to the Mayor and City Council a report with recommendations based upon a survey of the Bureau of Census; there — as here — the salient factor in the report was the citing of the net rental vacancy rate as the critical factor in basing his recommendation that a public emergency in housing then existed; and there — as here — the City Council conducted a hearing at which it considered the net rental vacancy rate as the basis upon which to predicate passage of a resolution to extend controls. In that case the court held that the “ City Council did not act arbitrarily in selecting specific criteria — a net rental vacancy rate * * * upon which to predicate the finding’ of emergency, nor can it be gainsaid that such factually uncontroverted data afforded a rationale basis for the legislative determination ‘ (p. 896).
Finally, as observed in Matter of International Ry. Co. v. Schwab (203 App. Div. 68, 74): ‘ ‘ mandamus is an extraordinary remedy and the judiciary is loathe to interfere with the executive department of the government in the exercise of its official duties, unless some specific act or thing which the law requires to be done has been omitted * * * ‘ The interference of the Supreme Court with the details of municipal administration is not to be encouraged. These details are entrusted by the people to officers chosen directly or indirectly by themselves. These officers are criminally responsible for a willful neglect of their duties, and upon them the responsibility for the government of our cities should usually be allowed to rest. The Supreme Court is not so organized as to enable it conveniently to assume a general supervisory power over their acts; and, indeed, such an assumption by it would be contrary to the whole spirit and intent of our government.’ ” (Quoting from People ex rel. Clapp v. Listman, 40 Misc. 372, 376, affd. 84 App. Div. 633.)
On the facts presented herein, the discretionary relief of mandamus does not lie merely because petitioner happens to disagree with respondent’s finding and interpretation of the *103 appropriate vacancy rate factor used to determine the existence of an emergency. This was not the kind of an administrative act which, under the law, respondent was “positively required ” to perform. (Matter of Walsh v. La Guardia, 269 N. Y. 437; cf. Matter of Zara Contr. Co. v. Cohen, 45 Misc 2d 497, affd. 23 A D 2d 718.)
Moreover, respondent’s finding was challenged on that very issue and fully reviewed at a public hearing before the City Council and thereafter indorsed in the form of a resolution passed by that legislative body. Nor can it be said that there was an insufficient rational basis for the legislative finding of the existence of an emergency as to justify this court to disregard that finding. This is particularly true when it is undisputed that the net rental vacancy rate factor used by both this respondent and the City Council has had long historical precedence in the process of ascertainig the existence of a housing shortage.
Consequently, the granting of this petition would be an unwarranted interference by the court with the action of the respondent. The petition is dismissed.