In the Matter of JOHN B. PERAZZO et al., Respondents, *v.* JOHN V. LINDSAY, as Mayor of the City of New York, et al., Appellants.

First Department, June 18, 1968.

*Alfred Weinstein* of counsel (*Stanley Buchsbaum* and *Leonard Koerner* with him on the brief; *J. Lee Rankin, Corporation Counsel,* attorney), for appellants.

*Emanuel P. Popolizio* of counsel (*Anthony L. Piazza* with him on the brief), for respondents.

*Per Curiam.* This proceeding, instituted pursuant to article 78 of the CPLR, seeks mandamus type relief against the Mayor, the Police Commissioner and the Commissioner of Licenses of the City of New York in the matter of enforcement of Penal Law and Administrative Code provisions and licensing regulations alleged to be the subject of general violation in the Greenwich Village area. The petition and supporting affidavits, however, fail to present any proper basis for the interference by

the court with the discretionary powers vested in these public officials. The petitioners, as property owners, taxpayers and residents of the particular area, do not have the general right to maintain an article 78 proceeding to secure broad mandamus relief generally directed to the enforcement of the specified laws and ordinances.

It is well settled that the court will not usually interfere with the details of municipal administration or law enforcement. (See *Matter of Walsh* v. *La Guardia,* 269 N. Y. 437; *Matter of Silberman* v. *De Hoyos,* 11 A D 2d 853; *Matter of International Ry. Co.* v. *Schwab,* 203 App. Div. 68, app. dsmd. 235 N. Y. 562; *People ex rel. Judge* v. *Hylan,* 200 App. Div. 430; *Matter of Prentice* v. *Gulotta,* 13 Misc 2d 280; *Matter of Ungar* v. *Wagner,* 22 Misc 2d 403; *People ex rel. Clapp* v. *Listman,* 40 Misc. 372, affd. 84 App. Div. 633; cf. *R.* v. *Metropolitan Police Comr.,* [1968] 1 All E.R. 763.) " It is the settled policy of the courts not to review the exercise of discretion by public officials in the enforcement of State statutes, in the absence of a clear violation of some constitutional mandate." (*Gaynor* v. *Rockefeller,* 15 N Y 2d 120, 131). The details of municipal administration " are entrusted by the people to officers chosen directly or indirectly by themselves. * * * The Supreme Court is not so organized as to enable it conveniently to assume a general supervisory power over their acts; and, indeed, such an assumption by it would be contrary to the whole spirit and intent of our government. " (*Matter of International Ry. Co.* v. *Schwab, supra,* p. 74). " According to our scheme of government the power of the judicial branch to substitute its mandate for executive action is strictly limited. Such an invasion of the executive prerogative is only permissible when the facts show an uncontestable right to the performance of a ministerial act " (*Matter of Ungar* v. *Wagner, supra,* p. 404, (STEUER, J.).

There is no showing of any proper basis for the issuance of a court directive to compel the respondent officers to take action with respect to the alleged disorderly and unlawful activities in the particular area, nor to compel the enforcement by them of the various provisions of the Administrative Code governing the maintenance, operation and licensing of coffee houses in the area. There is no allegation here of any violation of a mandatory public duty to perform a specific official act as to which there is no discretion. The alleged official derelictions in the matter of violations in the operation of coffee houses are not shown to result from a failure to perform mandatory public duties, nor is there a showing that certain action by the respondent officers is required at this time for the protection of the

public health, welfare or morals. Therefore, the petition is not sustainable.

The order, entered January 17, 1968, should be reversed and vacated, on the law, without costs or disbursements, and the petition should be dismissed, without costs.

CAPOZZOLI, J. (dissenting in part). The petitioners-respondents, in paragraph 17 of their petition, have set forth " That the respondents have declined to utilize the provision of a civil penalty in Section B32–320.0(c) of the Administrative Code to punish violations of Subdivisions (a) of Section B32–311.0 of the Administrative Code ". The answer of the respondents-appellants, by failing to deny, admits this allegation. The petitioners, in paragraph 2(h) of their reply to the answer of the respondents, specifically call attention to such admission.

An examination of the Administrative Code of the City of New York discloses that subdivision c of section B32–320.0 was amended on November 4, 1965 by the City Council of the City of New York by adding the following: " c. In addition, any person who shall violate any provision of subdivision a of section B32–311.0 shall be subject to a civil penalty in the sum of two hundred fifty dollars for each and every day the violation exists. "

Prior to the adoption of this amendment the Committee on General Welfare of the City Council of the City of New York, to which this proposed amendment was referred, after inquiring into the merits of the proposed amendment, reported to the Council as follows: " The proposed local law seeks to amend certain sections of Chapter 32, Article 39 of the Administrative Code, in relation to coffee houses, in order to encourage compliance with the licensing requirements of the law and *provide more effective sanctions to deter violators. "* (Emphasis added.) (See *The City Record,* Saturday Oct. 9, 1965.)

Respondents' answering papers contain a number of affidavits giving detailed accounts of the criminal prosecutions instituted by them to eliminate the situation complained of by the petitioners. It is strange, however, that there is not one word in any of the respondents' answering papers to explain their refusal or declination to enforce the civil penalty section above mentioned.

In *People ex rel. Weatherwax* v. *Watt* (115 Misc. 120, 142, affd. 197 App. Div. 929) the court said as follows: " As was said in *People* v. *Stevens,* 13 Wend. 341: ' It is undoubtedly competent for the Legislature to subject any particular offense, both to a penalty and a criminal prosecution; it is not punishing the same offense twice. They are but parts of one punishment; they

both constitute the punishment which the law inflicts upon the offense. That they are enforced in different modes of proceeding, and at different times, does not affect the principle.'"" Since the situation of which complaint is made was so notorious as to have caused the Mayor of this city to direct his assistant to conduct an investigation into this matter, with emphasis on the abolishment of the operation of illegal coffee houses, it seems to me that some explanation is due from the respondents as to why they declined to enforce the civil penalty.

I am mindful of the fact that, generally, the courts do not review the exercise of discretion by public officials in the enforcement of statutes or ordinances. (*Gaynor* v. *Rockefeller,* 15 N Y 2d 120.) However, in the case at bar, there is nothing said by the respondents to indicate that their failure or declination to enforce the civil penalty is a decision reached after the exercise of their discretion. They are completely silent on this point. The least that should be done is to remand this matter to Special Term for a hearing, at which time the respondents can offer whatever explanation they have as to their reasons why they declined to carry out the mandate of the City Council. After all, this particular civil penalty was enacted into law in order to provide more effective sanctions against violators and, yet, respondents have declined to use it.

As was said by Mr. Justice LORETO (N. Y. L. J., Aug. 21, 1967, p. 12, col. 6) in his decision denying the motion of the respondents to dismiss the petition for legal insufficiency, " It may well be that proof will be developed that the determination not to enforce these statutes was necessitated by overriding reasons all in the superior public interest." But, absent such a showing, the public has the right to expect that the officials concerned will carry out the will of the people, as expressed through their City Councilmen. " Parties aggrieved by the violation of an ordinance may file a complaint and cause a warrant to be issued. An official who fails to perform his duty may be removed. Yet the courts have not in every case left an aggrieved party to these remedies alone. Where the right to enforce an ordinance ' affects the general public, and * * * is the concern of every citizen ' or where there are numerous violations * * * the courts will interfere and compel action." (*Matter of Carmody* v. *City of Elmira,* 160 Misc. 916, 917.)

Therefore, while I agree in the main with the majority opinion, I dissent from same insofar as it fails to remand this matter to Special Term for a hearing limited to the issue of the declination of the respondents to enforce the civil penalty called for

by subdivision c of section B32–320.0 of the Administrative Code of the City of New York.

STEVENS, J. P., EAGER and STEUER, JJ., concur in *Per Curiam* opinion; CAPOZZOLI, J., dissents, in part, in opinion in which McNALLY, J., concurs.

Order and judgment (one paper) reversed, on the law, without costs or disbursements, and the petition dismissed, without costs.