Louis B. Heller, J.
This is an article 78 proceeding wherein petitioner, on behalf of himself and all other commuters similarly situated, seeks a judgment requiring the respondent New York City Transit Authority to construct an escalator at the Brighton Beach BMT elevated station. Respondent cross-moves to dismiss the petition.
The petitioner, a 74-year-old retiree resident of the Brighton Beach community in Brooklyn, claims that the BMT elevated station is more than 5 stories high, and that he and many others in the area dependent on the station, which contains an inordinate proportion of elderly people (35%), are physically unable to climb the multiple stairs, and are thus deprived of subway service.
My secretary made an on-site inspection of the elevated station involved, and he reports that the climb to the station platform is equivalent to walking up the stairs to the third floor landing of an ordinary apartment house. There are many such 30-foot high elevated stations throughout the city, and indeed, there are many more much higher than the Brighton Beach BMT station. These elevated stations could very well utilize, but do not have, escalators.
Of course, it would be desirable for all such high-rise elevated stations to have escalators. The sad fact, however, is that the 'City of New York is in dire financial straits and is presently unable to expend the funds that would be required to construct these admittedly beneficial improvements. The transit system, of which the Brighton Beach elevated system is a part, is owned by the City of New York. Pursuant to the Public Authorities Law and an agreement of lease with the city, the Transit Authority in 1953 acquired the transit system from the city and operates it for the convenience and safety of the public.
The Transit Authority, successor to the Board of Transportation, is empowered by the Public Authorities Law and the Rapid Transit Law to construct improvements to the transit system. In accordance with the agreement of lease, such improvements are capital costs to be paid for by the city. The construction of escalators would be such a capital cost.
Funds for capital costs are made available to the Transit Authority in the city’s capital budget. The discretion, however, as to which transit improvements should be proposed for inclusion in the city’s capital budget is vested in the Tran *600 sit Authority by the Public Authorities Law and the Rapid Transit Law. In its annual estimate, submitted to the city, the Transit Authority proposes, first, those improvements which are necessary for the continued safe operation of the transit system; secondly, those improvements which affect major sections of the transit system for the general public, and lastly, if sufficient funds are made available, those improvements which, because of their nature, will benefit only riders at specific locations. The extent to which the Transit Authority may make any of these improvements is dependent on the amount of funds which the city makes available for the various transit projects.
There is a constitutional limitation on the funds which the city can expend for capital improvements. Because such funds are required for improvements in many other vital services, such as, education, health, water supply, garbage disposal, etc., the amount made available to the Transit Authority in the city’s capital budget for transit improvement is generally less than requested. The Transit Authority thereupon, in its discretion, selects the more urgently needed improvements until adequate funds are made available by the city in some future capital budget.
Petitioner is seeking to have the court interject itself into the Transit Authority’s and the city’s capital improvement program for the city’s transit system. He seeks to single out one specific elevated station, the BMT Brighton Beach station. Unless he can show that the discretion exercised by the Transit Authority in making capital improvements is arbitrary, capricious and unreasonable, the court is powerless to intercede.
It is well settled that the courts will not intervene in matters entrusted to governmental agencies. Most recently, this court reasserted this principle in Rattray v. Mayor of City of New York, (N. Y. L. J., March 19, 1970, p. 15, col. 4), where petitioners sought judicial intercession directing the Mayor and the Department of ¡Sanitation and Fire Department to remove garbage from certain vacant lots. This court said: ‘1 An administrative discretion is involved herein in matters dealing with the operation of government. The details of municipal administration are entrusted by the people to officers chosen directly or indirectly by themselves. The Supreme Court is not so organized as to enable it to assume a general supervisory power over their acts. Indeed, such an assumption by the court would be contrary to the whole spirit and intent of our government. (Matter of International Railway Co. v. Schwab, 203 App. Div. 68, appeal dismissed 235 N. Y. 562.) According to our scheme *601 of government the power of the judicial branch to substitute its mandate for executive action is strictly limited. Such an invasion of the executive prerogative is only permissible when the facts show an uncontestable right to the performance of a ministerial act. (Matter of Ungar v. Wagner, 22 Misc 2d 403.)
“ Mandamus is an extraordinary remedy and the judiciary is loath to interfere with the executive branch of government in the exercise of its official duties unless some specific act or thing the law requires to be done has been omitted. (Blakie v. Wagner, 46 Misc 2d 441.) Unless there is a proper showing of a violation of some constitutional mandate, absent herein, I will not interfere with the details of municipal administration.”
The Transit Authority’s decision was not arbitrarily arrived at, but was based on an evaluation of the conditions at the Brighton Beach station when compared to criteria which it has reasonably established to enable it to determine whether or not an escalator is warranted at the present time considering the limited over-all funds available.
Having stated that the city presently is not in a financial position to build an escalator to the Brighton Beach station platform, I do not by any manner or means intend to suggest that the Transit Authority file this admirable request in its deep freeze, dead storage limbo of visionary projects marked for oblivion. The proposal of escalators for high-rise elevated stations and deep-down subway stations is feasible, practicable, and merits the serious consideration of the Transit Authority when, hopefully, the city extricates itself from its present fiscal morass.
I want to particularly commend Assemblyman Solarz, whose Assembly District encompasses the locality served by the Brighton Beach station, for his valiant and persistent efforts to bring about this proposed improvement for the benefit of the many elderly members of his constituency.
It is with deep regret that I must deny petitioner’s application and grant respondent’s cross motion to dismiss.