Daniel G. Albert, J.
It seems incredible that this proceeding should have to be brought before the court to resolve a dispute that should never have arisen and that, once it did arise, should have been adjusted by consultation rather than litigation.
The parties are all local governments and public officials; their common purpose and function is; or should be, to promote the health, safety and welfare of the public. Rather than exercising their varying jurisdictional responsibilities to that end in a spirit of co-operation, some of them refuse, it appears, even to speak with the others involved upon an issue of common concern. The situation is deplorable and, as will be clearer when the circumstances giving rise to this proceeding are set forth infra, a disgraceful situation could very well become a tragic situation if there is the slightest basis for the petitioner’s concern.
The adversaries are a Board of Education and a Village Board of Trustees and Mayor. The issue is a traffic signal light which *265 the petitioning Board of Education says is needed at the entrance to one of its elementary schools, which the respondent County of Nassau says it is ready, willing and able to install, and about which the respondent village officials say nothing.
The facts alleged in the petition and supporting affidavits are not disputed. The petitioner’s school district (commonly known as the “Manhasset” School District) encompasses territory located within several incorporated villages as well as certain unincorporated areas of the Town of North Hempstead. The southeasterly corner of the school district lies within the boundaries of the respondent Village of North Hills. Since September, 1968, the school district has operated an elementary school fronting on the easterly side of Shelter Bock Road within the respondent village. Shelter Rock Road is a major, four-lane county road extending from Northern Boulevard in Manhasset south toward Mineóla. The Long Island Expressway crosses Shelter Rock Road approximately two miles south of Northern Boulevard, and the petitioner’s elementary school is located approximately midway between these two busy intersections. At present, there are no traffic control signals on Shelter Rock Road between Northern Boulevard and the Long Island Expressway, a distance, as already indicated, of approximately two miles. The posted speed limit upon that portion of the road is 40 miles per hour.
Petitioner has submitted to the court a copy of an engineering study commissioned by the Village of North Hills, of traffic conditions on Shelter Rock Road at the school involved herein. The study reports, among other things, that the curvature of the roadway and a 1 ‘ crest ’ ’ south of the entrance to the school restrict a northbound driver’s “ sight distance ” to the entrance to about 500 feet and the “ sight distance ” of a northbound driver in the right-hand lane to about 300 feet.
The study also, reports that a survey of the Nassau County Department of Public Works in October, 1970, indicated an average daily two-way traffic volume of 14,300 vehicles on the subject portion of Shelter Rock Road with “peak” traffic between 3:00 and 4:00 p.m. The report found that, of a sample of 100 northbound vehicles passing the school site, 57% exceeded the posted speed limit.
Petitioner’s papers show that more than one thousand persons attend at the school eyery day, including 921 children, virtually all of them arriving by school bus or private vehicle. Since the school is located in the southernmost portion of the school district, most of' these vehicles approach it from the north and *266 are, therefore, required to turn left and cross the two northbound lanes on Shelter Bock Boad to enter the school grounds.
Since 1967, before the opening of the Shelter Bock School, the petitioner has been attempting to obtain installation of a traffic control .signal at the point where the entrance to the school meets Shelter Bock Boad. In April, 1969, it obtained a commitment from the then First Deputy County Executive that the county would install a traffic-actuated signal, ‘ ‘ within approximately eight weeks ’ ’, which ‘1 will provide a left turn arrow for vehicles turning left into the entrance when insufficient gaps exist in northbound Shelter Bock Boad traffic ’
Shortly thereafter, however, and before the county installed the traffic control device referred to supra, section 1652-a of the Vehicle and Traffic Law was enacted (L. 1969, ch. 396, eff. May 9, 1969) providing inter alia that: ‘ ‘ The county superintendent of highways of a county may, when authorized by the county governing board, erect and maintain traffic signs and signals on any highway, road or street within a city, town or village within such county providing the city, town or village having jurisdiction over such highway, road or street consents thereto. ’ ’
This section of the statute was subsequently amended (L. 1970, ch. 210, eff. Oct. 1, 1970; L. 1970, ch. 932, eff. May 18, 1970) and presently reads as follows: ‘ ‘ The county superintendent of highways of a county may, when authorized by the county governing board, erect and maintain traffic signs, signals and markings on, and provide traffic engineering services in relation to any highway, road or street within a city, town or village within such county, except state highways maintained by the state, providing the governing body of the city, town or village having jurisdiction over such highway, road or street determines on the basis of an engineering and traffic investigation that such traffic signs, signals and markings are necessary, issues any necessary ordinance, order, rule, or regulation with respect thereto, consents to the erection and maintenance of such traffic signs, signals and markings by the county and provides for reimbursement to the county of the costs and expenses of such erection and maintenance. The power granted to the county superintendent of highways by this section shall in no way diminish any power over roads granted to counties or- county highway superintendents but shall be in addition to any such powers.”
Thereafter, representatives of both the county and the petitioner school board attempted, without success, to obtain the village’s consent. Letters from the then First Deputy County *267 Executive to the respondent Mayor were not answered, and requests by the school board to meet with the Village Trustees were denied. In December, 1970, the school made formal demand upon the Village Trustees to ‘ ‘ take such action as may be required ” to grant permission for the installation of the desired traffic light by the county. Receiving no response, petitioner instituted this proceeding in April, 1971.
The respondent village and village officials’ response to the petition herein is a motion to dismiss grounded on several technical arguments. These respondents contend that: (1) petitioner lacks standing to bring the proceeding; (2) the court lacks jurisdiction to consider the petitioner’s request; (3) petitioner has failed to join a necessary party, the County Superintendent of Highways; (4) the relief requested is not authorized by any pertinent statute; (5) there has been no final determination reviewable by the court; (6) the relief requested (i.e., “ a traffic control signal”) is too vague, and (7) petitioner fails to set forth facts entitling it to relief.
These respondents do not, however, address one word to the merits of petitioner’s request for a traffic signal device in front of the elementary school on Shelter Rock Road.
If the foregoing recitation seems to be highly critical of the actions and attitudes of the Village of North Hills and its officials, it is only because this court views their conduct, as revealed by the papers submitted, as deserving of such criticism. It is, frankly, inconceivable that a Village Board of Trustees would refuse to discuss a matter such as this with any group of concerned parties, much less the local school board. Yet this is exactly the picture presented by petitioner’s affidavits and exhibits which the respondents (other than the County of Nassau) have allowed to stand uncontroverted.
The issue before the court, however, is not the conduct of these respondents but whether this court has jurisdiction to compel them to act herein, either by directing that the village consent to installation of the traffic signal or by directing that it consider the matter at a public hearing and render a determination upon petitioner’s request.
Unfortunately, while the road in question is a “ county road ’ ’, section 1652-a of the Vehicle and Traffic Law, quoted supra, and section 12-4.0 (subd. c, par. 4) of the Nassau County Administrative Code (L. 1939, ch. 272, as amd. by L. 1946, eh. 992) which vests ‘ ‘ sole jurisdiction ’ ’ to adopt traffic ordinances regulating traffic on county roads passing through villages upon the Board of Trustees of such villages, makes it clear that the determina *268 tion whether or not to direct the installation of a traffic signal device at the location requested by petitioner is a legislative act within the discretion of the Village Trustees. An article 78 proceeding may not be used to review the refusal to perform such an act or to enforce performance of it (Matter of Walsh v. La Guardia, 269 N. Y. 437; Matter of International Ry. Co. v. Schwab, 203 App. Div. 68).
Accordingly, the court is reluctantly constrained to grant respondents ’ motion to dismiss the petition, without costs, and a short-form order to that effect has been issued simultaneously herewith.