Filed 11/27/23  Karlan v. City of Los Angeles CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LISA KARLAN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF LOS ANGELES et al., <br><br> Defendants and Respondents. | B315168 <br> (Los Angeles County <br> Super. Ct. No. BS174454) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel and Robert B. Broadbelt, Judges.  Affirmed.

Pease Law, Bryan W. Pease and Parisa Ijadi-Maghsoodi; Law Offices of G. David Tenenbaum and G. David Tenenbaum, for Plaintiffs and Appellants.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Scott Marcus, Chief Assistant City Attorney, and Timothy Martin, Deputy City Attorney, for Defendants and Respondents.

This is the second appeal arising from protesting activity outside an Orthodox Jewish synagogue's facility during a Kapparot ritual in which a chicken is killed and the carcass discarded. (See *Animal Protection & Rescue League, Inc. et al. v. City of Los Angeles* (Dec. 13, 2021, B304781) [nonpub. opn.].) Following their protest of a Kapparot ritual in September 2017, plaintiffs and appellants Lisa Karlan, Cory Mac A'Ghobhainn, and Amy Jean Davis filed this lawsuit against defendants and respondents City of Los Angeles (City) and Los Angeles Police Captain Paul Vernon, requesting damages, declaratory and injunctive relief, and a traditional writ of mandate. The complaint alleged the City abused its discretion and endorsed the exercise of religion by refusing to enforce Penal Code section 597, which prohibits the intentional and malicious killing of animals, against Kapparot practitioners. The complaint also alleged violations of the Tom Bane Civil Rights Acts (the Bane Act) and the Ralph Civil Rights Act of 1976 (the Ralph Act) (Civ. Code, §§ 52.1, 51.7) against Captain Vernon for his threats to arrest appellants if they used a projector or amplified sound during their protest.

On appeal from the judgment of dismissal following an order sustaining the respondents' demurrers to the operative complaint, appellants contend they have adequately pleaded causes of action against respondents for (1) traditional writ of mandate and violations of the (2) Bane Act, (3) Ralph Act, and (4) Establishment Clause of the First Amendment. We affirm.

## BACKGROUND

We recite the factual background from the allegations in the operative second amended complaint and matters judicially noticed by the trial court.

On September 12, 2017, the Board of Commissioners of the Los Angeles Department of Animal Services (Department) held a meeting to address a staff report on the City's "Kapparot response." When discussing the report, a commissioner described Kapparot as a "barbaric ritual [that] is protected by the First Amendment although the vast majority of Jews do not believe in the practice." The commissioner further stated, "The Department has struggled with how best and effectively to take action to protect chickens within the framework of the First Amendment," and then invited a deputy city attorney to discuss the legal status of the Kapparot ritual. The attorney stated, "[W]e have a confluence between the First Amendment protection of religion and animal humane laws." She continued, "Since courts have failed to make any clear decision that this is a violation of law, without infringing on the actual ceremony, our goal is to make sure that the animals in transportation, holding, feeding and watering are humanely taken care of."

Department Commissioners held another meeting on September 26, 2017. During that hearing, an unidentified person associated with the City Attorney's Office advised the Department against enforcing Penal Code section 597 against Kapparot practitioners. Subject to various statutory exemptions, Penal Code section 597 prohibits the malicious and intentional killing of an animal. (§§ 597, subd. (a), 599c.)

3

The following day, appellants protested on a public sidewalk near a Jewish facility performing the Kapparot ritual.[1] During the protest, Davis attempted to use a small projector to display a message about compassion and how coins could be used in the place of chickens in the ritual. Captain Vernon responded to the protest and threatened to arrest appellants, confiscate Davis's projector, and shut down the protest. When Karlan requested to make a private persons arrest of those participating in the Kapparot ritual, Captain Vernon refused, stating "the government [did] not have the authority" under the United States Constitution to effectuate an arrest under Penal Code section 597 for a recognized religious ritual.

## A.    The Operative Complaint

Appellants initiated this action in July 2018 and filed the operative complaint on May 29, 2019. The complaint asserted four causes of action against the City and/or Captain Vernon.

### 1.    *Traditional Writ of Mandate*

Appellant's first cause of action against the City is a two-count claim for traditional writ of mandate. (Code Civ. Proc., § 1085.) The first count requested an order "requiring the City to exercise its discretion with respect to enforcing . . . [section] 597 against killing and discarding of chickens for Kapparot rituals, rather than completely abrogating its responsibilities in this regard simply because religion is involved." The complaint alleged the City had abused its discretion by creating "a de facto

---

[1]    Those responsible for conducting the Kapparot ritual, the Hebrew Discovery Center and Netanel Louie, are named defendants but are not parties to this appeal.

4

exception to animal cruelty laws for killings motivated by religion that has not been provided for by the Legislature and is not required by the Constitution." The complaint further alleged that because Penal Code section 597 "is a neutral law of general applicability," it can be applied to conduct "motivated by religion" if there is a rational basis to do so. (Citing *Church of the Lukumi Babalu Aye v. City of Hialeah* (1992) 508 U.S. 520 (*Lukumi*).)

The second count challenged the constitutionality of Los Angeles Municipal Code section 53.67 (section 53.67), a City ordinance prohibiting the practice of "animal sacrifice" motivated by religion.[2] Under this count, appellants requested an order requiring the City "to either (a) exercise its discretion to construe and enforce [section] 53.67 in a constitutionally permissible manner, (b) repeal [section] 53.67, or (c) amend [section] 53.67 to cure its constitutional defects."

### 2. *The Bane and Ralph Act*

The fourth and fifth causes of action for violations of the Ralph and Bane Acts (Civ. Code, §§ 52.1, 51.7) alleged Captain Vernon had threatened to arrest appellants and confiscate a projector if they used it during their protest. Both causes of action were asserted against Captain Vernon directly and against the City under respondeat superior.

---

[2] As provided in the operative complaint, section 53.67 prohibits animal sacrifices, defined as "the injuring or killing of any animal in any religious or cult ritual . . . , wherein the animal has not been injured or killed primarily for food purposes, . . . ."

5

### 3. *Establishment Clause*

The sixth cause of action for violation of the Establishment Clause under the First and Fourteenth Amendments of the United States Constitution alleged that the City, by intentionally refusing to enforce Penal Code section 597 against those practicing the Kapparot ritual, "promote[d] criminal acts in the name of religion." Appellants alleged they had standing to assert this claim even though they had not suffered "a concrete and particular injury separate from that of the general public, unlike [*sic*] Article III courts." They requested a declaration the City was violating the Establishment Clause "by actively conspiring with, cooperating with and protecting the criminal acts" of Kapparot practitioners.[3]

## B. The Demurrers and Oppositions

Respondents filed demurrers to the operative complaint. As to the first cause of action for traditional writ of mandate, respondents argued appellants had not demonstrated a beneficial or public interest to establish standing. On the merits, respondents argued the City had no ministerial duty to enforce Penal Code section 597 against particular individuals and instead had considerable discretion when deciding whether to enforce criminal laws. "There are a number of different issues that need to be determined in any alleged Penal Code violation analysis, including whether the conduct was 'malicious' as required by . . . [section] 597, whether an exception applies, the types of standards that the behavior needs to be scrutinized

---

[3] The remaining causes of action in the operative complaint were either voluntarily dismissed or sustained without leave to amend and are unchallenged in this appeal.

6

under, and other laws that might be implicated—all of which reinforce that the City has full discretion." In addition, respondents argued the court had no authority to order the amendment of section 53.67.

Regarding the non-writ causes of action, respondents argued appellants lacked standing to pursue any claim under the Establishment Clause. Respondents also argued the complaint failed to plead violations under the Ralph and Bane Acts, both of which required the infliction of actual violence or a threat of violence.

In opposition to the demurrers, appellants contended their complaint raised "an important public policy" issue, which conferred them with standing to pursue their causes of action for traditional writ of mandate and violation of the Establishment Clause. Appellants challenged the remaining arguments on the merits.

## C.    The Trial Court's Ruling

Following hearings on the demurrers, the trial court issued an order sustaining the demurrers without leave to amend. The court first questioned appellants' standing under the public interest doctrine but determined it need not resolve the issue. The court found, "Even if [appellants] have sufficiently alleged public interest standing, [they] have not stated a claim for writ of mandate." Under the separation of powers doctrine, the court declined to provide "equitable relief (a writ of mandate) that would, in effect, require [the] City to enforce a penal law in a particular way against practitioners of Kapparot, . . . ." In so ruling, the court found various factors bore upon the City's decision to abstain enforcement of Penal Code section 597 against

7

the Kapparot ritual beyond the constitutional question posed in the operative complaint, such as whether the ritual was "malicious," whether an exception to the Penal Code applied, and whether enforcing the law would expose the City to potential liability. Turning to section 53.67, the court reasoned that even if the ordinance was facially unconstitutional, appellants furnished no authority under which the court could "issue a writ directing [the] City to amend section 53.67, repeal the ordinance, or enforce it in a particular manner."

Proceeding to the non-writ claims, the court found "a threat of wrongful arrest is not sufficient to constitute 'force, intimidation, or coercion'" under the Bane and Ralph Acts. In addition, the court found appellants failed to establish standing to assert an Establishment Clause claim, as the public interest doctrine did not apply to non-writ claims. After issuing its order sustaining the demurrers without leave to amend, the court entered judgment in favor of respondents. Appellants timely appealed.

## DISCUSSION

Appellants challenge the court's order sustaining the demurrers on all four causes of action against respondents. "A demurrer tests the legal sufficiency of the factual allegations in a complaint." (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.) "When a demurrer is sustained, appellate courts conduct a de novo review to determine whether the pleading alleges facts sufficient to state a cause of action under any possible legal theory." (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1242.) We consider all material facts properly pleaded and matters

8

subject to judicial notice and presume the judgment of the trial court is correct; appellants bear the burden of affirmatively proving error in the trial court's rulings. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609; *Ramirez v. Tulare County Dist. Attorney's Office* (2017) 9 Cal.App.5th 911, 924; *Young v. Gannon* (2002) 97 Cal.App.4th 209, 220.)

## A.      Traditional Writ of Mandate (First Cause of Action)

Appellants' first cause of action seeks a writ of mandate compelling the City to enforce Penal Code section 597 against Kapparot practitioners and rewrite Penal Code section 53.67 so that it can be enforced against Kapparot practitioners. The cause of action fails on both counts.

### 1.      *Governing Law*

To state a cause of action for traditional writ of mandate, appellants were required to plead facts showing (1) a clear duty to act by respondents; (2) a beneficial interest in the performance of that duty; (3) respondents' ability to perform the duty; (4) the failure to perform or an abuse of the respondents' discretion if so acting; and (5) no other plain, speedy, or adequate remedy at law. (*Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 915; see Code Civ. Proc., § 1085.)

A writ of mandate is often sought to compel a public body or public official to perform a ministerial duty—one that is required by statute to be performed without regard to judgment or opinion. (*Ellena v. Department of Ins.* (2014) 230 Cal.App.4th 198, 205; *The H.N. & Frances C. Berger Foundation v. Perez* (2013) 218 Cal.App.4th 37, 46; *County of Los Angeles v. City of Los Angeles* (2013) 214 Cal.App.4th 643, 653.) In such a case, it

9

is generally argued the duty is clear and the public body or official lacks discretion not to perform it.

When a writ of mandate seeks to compel a public body or official to exercise its discretion in a particular way, such as to compel a public entity to prosecute (or not prosecute) a criminal violation, the analysis is different. Public entities have broad discretionary authority over the investigation and prosecution of criminal violations. (*People v. Richardson* (2008) 43 Cal.4th 959, 1013; see Pen. Code, §§ 836, 836.5, 830.9; Gov. Code, §§ 26500, 38630, subd. (b), 41803.5, subds. (a)-(b), 72193, subd. (a).) "It is well settled that the prosecuting authorities, exercising executive functions, ordinarily have the sole discretion to determine whom to charge with public offenses and what charges to bring. [Citation.] This prosecutorial discretion to choose, for each particular case, the actual charges from among those potentially available arises from "'the complex considerations necessary for the effective and efficient administration of law enforcement.'" [Citations.]" (*People v. Birks* (1998) 19 Cal.4th 108, 134; accord, *Tomlinson v. Pierce* (1960) 178 Cal.App.2d 112, 116 [law enforcement officers vested with discretion to "arrest or not to arrest"].)

Under the separation of powers doctrine, such broad discretionary acts are generally precluded from judicial review "even by mandamus." (*People v. Cimarusti* (1978) 81 Cal.App.3d 314, 322; see *Steen v. Appellate Division of Superior Court* (2014) 59 Cal.4th 1045, 1053; see also Gov. Code, §§ 820.2, 820.4, 820.6, 821.) Indeed, mandate will not lie "to control an exercise of discretion, i.e., to compel an official to exercise discretion in a particular manner." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442.) This principle is statutorily

10

recognized for the enforcement of criminal laws.  Civil Code section 3369, on which the trial court relied below, provides that "[n]either specific nor preventive relief can be granted to enforce a . . . penal law, except in a case of nuisance or as otherwise provided by law."

A public entity's ability to exercise its discretion is not completely unfettered, however.  "Although mandate will not lie to control a public agency's discretion, that is to say, force the exercise of discretion in a particular manner, it will lie to correct abuses of discretion" that are arbitrary, capricious, or entirely without support.  (*Helena F. v. West Contra Costa Unified School Dist.* (1996) 49 Cal.App.4th 1793, 1799, citing *Manjares v. Newton* (1966) 64 Cal.2d 365, 370–371; see *CV Amalgamated LLC v. City of Chula Vista* (2022) 82 Cal.App.5th 265, 284.)  This includes an abuse of discretion in reaching a decision not to enforce a particular law.  (See *Coachella Valley Unified School Dist. v. State of California* (2009) 176 Cal.App.4th 93, 116 (*Coachella Valley Unified*).)  A public entity's decision is "legislative or quasi-legislative" in nature when it involves a policy to be applied in future cases.  (See *Stanford Vina Ranch Irrigation Co. v. State of California* (2020) 50 Cal.App.5th 976, 996.)  Correcting an abuse of discretion may require setting aside the policy on which that discretion was exercised.  (See *Ridgecrest Charter School v. Sierra Sands Unified School Dist.* (2005) 130 Cal.App.4th 986, 1003–1007.)

11

2. *Enforcement of Penal Code Section 597*
   a. *Appellants Cannot Compel Enforcement of*
      *Section 597*

Appellants have failed to adequately plead a cause of action for writ of traditional mandate on their first count to enforce section 597 against Kapparot practitioners. The order appellants seek in this case—"to compel [the City] 'to make enforcement decisions without regard to religion'"—would control the manner in which the City exercises its discretion to enforce criminal laws. This type of order is barred under the rule codified in Civil Code section 3369. (Cf. *Acosta v. Brown* (2013) 213 Cal.App.4th 234, 249 [mandamus actions are controlled by equitable principles]; *Bruce v. Gregory* (1967) 65 Cal.2d 666, 671 [same].)

This case presents strikingly similar facts and arguments as those raised in *Alliance to End Chickens as Kaporos v. New York City Police Dept.* (2017) 152 A.D.3d 113, 119 [55 N.Y.S.3d 31] (*Alliance*). In that case, the plaintiffs filed a mandamus action against the City of New York and its police department to enforce various animal cruelty laws against Kapparot practitioners. (*Id.* at pp. 115–116, 119.)[4] As in this case, the parties in *Alliance* disputed "whether and to what extent the implicated laws can be enforced without violating constitutional rights" belonging to Kapparot practitioners. (*Id.* at p. 118, citing *Lukumi*, *supra*, 508 U.S. 520.)

The trial court granted the defendants' motion to dismiss the action, and the Appellate Division of the Supreme Court of

---

[4] The laws at issue in *Alliance* prohibited the unjustified killing of animals. (Agriculture & Markets Law, §§ 353, 350, subd. 2 [defining animal "cruelty" as any act "whereby unjustifiable physical pain, suffering or death is caused or permitted"], discussed in *Alliance*, *supra*, at pp. 115–116, 119.)

12

New York affirmed.  (*Alliance, supra*, 152 A.D.3d at pp. 115, 121.)
Invoking the separation of powers doctrine, the court in *Alliance*
held that "mandamus does not lie where, as here, plaintiffs seek
to compel the enforcement of laws and regulations implicating
discretionary actions . . . ."  (*Id.* at p. 115.)  The court cautioned
against "[o]pening up claims of this nature," which would
unjustifiably intrude into "the everyday affairs of the City
defendants."  (*Id.* at p. 120.)  Citing *Lukumi*, the court
"recognized animal sacrifice as a religious sacrament" protected
under the Free Exercise Clause of the United States
Constitution.  (*Id.* at p. 118, citing *Lukumi, supra*, at p. 531.)  As
such, the court found it unclear whether the implicated laws
could be enforced without violating the constitutional rights of
religious practitioners.  Ultimately, the court declined to interfere
with decisions the City defendants made concerning the proper
enforcement of laws and regulations, which involved "the exercise
of reasoned judgment" on their part.  (*Id.* at p. 119.)

While *Alliance* is not binding on this court, we find its
reasoning persuasive and apply it to reach the same conclusion in
this case.  Under the separation of powers doctrine, appellants
may not dictate "which laws are enforced and how, or against
whom."  (*Alliance, supra*, 152 A.D.3d at p. 119.)

b.      *The City Did Not Abuse its Discretion*

Anticipating this result, appellants contend they are not
seeking enforcement of Penal Code section 597 but rather seeking
judicial correction of the City's abuse of discretion in making a
legislative decision not to enforce Penal Code section 597 against
Kapparot rituals.

13

Initially, we question whether the City's decision not to enforce section 597 on September 27, 2017, against particular individuals constitutes a legislative or "quasi-legislative" act. (See *Dominey v. Department of Personnel Administration* (1988) 205 Cal.App.3d 729, 737 ["adjudicative facts are '"facts concerning the immediate parties[—]who did what, where, when, how, and with what motive or intent"'"].)  As the City was applying a rule to an existing sets of facts, its actions were adjudicative (and not legislative) in nature.  (*Ibid*.; see *Save Civita Because Sudberry Won't v. City of San Diego* (2021) 72 Cal.App.5th 957, 984; *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1188.)

Even if we were to consider the City's decision not to enforce section 597 as a legislative or quasi-legislative act, appellants have failed to demonstrate an abuse of the City's discretion.  When determining whether the City abused its discretion, we may not substitute our judgment for the City, "'and if reasonable minds may disagree as to the wisdom of the [City's] action, its determination must be upheld.'  [Citation.]" (*California Public Records Research, Inc. v. County of Alameda* (2019) 37 Cal.App.5th 800, 805–806.)  We may interfere in the City's actions only if there is an abuse of discretion "as a matter of law."  (*Coachella Valley Unified*, *supra*, 176 Cal.App.4th at p. 113; see *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 703 [mandamus will lie only "where if the facts lead to only one choice"].)

Appellants here fail to demonstrate how the City acted unreasonably and arbitrarily.  Appellants admit their purpose in filing this action was to obtain a ruling as to whether "religious

14

motivation [can lawfully] create[ ] an exemption from prosecution" under Penal Code section 597.[5]  Appellants' pursuit of a definitive ruling means the issue remained *unsettled* at the time the City made its choice not to enforce the law.

Appellants argue the City should have enforced section 597 against Kapparot practitioners pursuant to *Lukumi, supra*, 508 U.S. 520.  But the high court in *Lukumi* neither interpreted Penal Code section 597 nor mandated its enforcement in a particular manner.  The court simply provided a framework for analyzing constitutional challenges to facially neutral laws of general applicability.  (See *Lukumi, supra*, 508 U.S. at p. 531.) Appellants have furnished no case, and we are aware of none, upholding the constitutional application of Penal Code section 597 against Kapparot rituals or mandating the enforcement of any criminal law against it.  Absent any prior determination, we find nothing arbitrary or unreasonable in the City's own decision on the issue following advice of counsel, and recognizing the potential for litigation by Kapparot practitioners if it were to enforce Penal Code section 597 against them.  (See *Farm Sanctuary, Inc. v. Department of Food & Agriculture* (1998) 63 Cal.App.4th 495, 505 [""" [t]he contemporaneous administrative construction of a statute by an administrative agency charged with its enforcement and interpretation is entitled to great weight unless it is clearly erroneous or unauthorized"""].)

---

[5]  Appellants in the trial court argued, "The point of this lawsuit is to obtain a ruling that purported First Amendment protections for religious animal sacrifice are nonexistent, and no exception to neutral laws of general applicability is required by the First Amendment for otherwise illegal conduct just because it is motivated by religion, . . . ."

Appellants have failed to plead an abuse of the City's enforcement discretion.[6]

### 3. *Repeal or Amendment to Section 53.67*

Appellants next contend they have adequately pleaded a claim to compel the City to repeal or amend section 53.67, the City ordinance prohibiting animal sacrifice motivated by religion. Respondents contend, and we agree, that appellants have forfeited this challenge.

"To demonstrate error, appellant[s] must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.]  When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["conclusory claims of error will fail"].)  "'This court is not inclined to act as counsel for . . . any appellant and furnish a legal argument as to how the trial court's rulings in this regard constituted an abuse of discretion' [citation], or a mistake of law." (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.)  These principles apply with equal force to issues subject to de novo review.  (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.)

The trial court sustained the demurrer to this count due to appellants' failure to marshal any authority that "the court could issue a writ directing the City to amend section 53.67, repeal the ordinance, or enforce it in a particular manner."  In their

---

[6]    The parties have not addressed the trial court's additional concern regarding appellants' standing to bring this claim.  We do not consider the issue but echo the trial court's concern.

appellate briefs, appellants make only the conclusory assertion that it "is undisputed that [section] 53.67 is unconstitutional for the exact reasons stated in *Lukumi*."

Even if we assume that to be true, appellants furnish no discussion about the ability of a court to issue an order in the manner they have requested—requiring that the City, in essence, rewrite the law and enforce it in a particular manner. (See *City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1310 [courts are generally without power "'to interfere with purely legislative action, in the sense that it may not command or prohibit legislative acts, whether the act contemplated'" be at the state or local level].)

## B. Bane and Ralph Acts (Fourth and Fifth Cause of Action)

Appellants contend they have adequately pleaded violations under the Bane and Ralph Acts for Captain Vernon's threat to arrest them and confiscate a projector. We disagree.

The Bane Act provides for liability for the interference or attempted interference with a person's rights "by threat, intimidation, or coercion." (Civ. Code, § 52.1, subd. (b).) To plead a cause of action under the Bane Act, the plaintiff must show "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 67 (*Allen*).) "'Speech is insufficient to establish the requisite threat unless it includes the threat of violence.'" (*Center for Bio-Ethical Reform, Inc. v. The Irvine Co., LLC* (2019) 37 Cal.App.5th 97, 115; accord, Civ. Code, § 52.1, subd. (k)

17

[speech alone is insufficient to support action "except upon a showing that the speech itself threatens violence against a specific person or group of persons"].)

The Ralph Act guarantees all persons have "the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any" additional characteristic not relevant here.  (Civ. Code, § 51.7, subd. (b)(1).)  The elements of a Ralph Act claim include (1) the defendant committed or threatened violent acts against the plaintiffs; (2) the defendant was motivated by his or her perception of the plaintiffs' political affiliation; (3) the plaintiffs were harmed; and (4) the defendant's conduct was a substantial factor in causing the harm.  (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 880–881.)  As with claims brought under the Bane Act, claims brought under the Ralph Act require threats of violence, meaning an "expression of intent to injure or damage [the] plaintiffs or their property."  (*Ramirez v. Wong* (2010) 188 Cal.App.4th 1480, 1486 (*Ramirez*).)

The operative complaint in this case alleged Captain Vernon violated appellants' rights to free speech and political affiliation by threatening to arrest them and confiscate a projector.  Appellants identify no allegation in which Captain Vernon threatened them with violence beyond his threats of arrest.  Without more, appellants have failed to plead sufficient facts to establish violations under the Bane and Ralph Act.  (See *Allen, supra,* 234 Cal.App.4th at pp. 66–67 [holding that police officers' threats to arrest persons and confiscate their property

18

alone do not support a cause of action for violation of the Bane Act]; *Ramirez*, *supra*, 188 Cal.App.4th at p. 1486.)[7]

## C.     Establishment Clause (Sixth Cause of Action)

Appellants finally contend they have adequately pleaded their sixth cause of action for violation of the Establishment Clause of the First Amendment. The trial court sustained the demurrer to this cause of action after finding appellants lacked direct standing or standing under the public interest doctrine. Raised for the first time on appeal, appellants contend they have taxpayer standing to assert this claim. Appellants' failure to present this theory in the trial court and adequately brief the issue on appeal has forfeited the argument.

Though appellants alleged the City expended "taxpayer resources" to further Kapparot rituals, they never alleged taxpayer standing or a factual basis for taxpayer standing.[8] Nor did their opposition to the demurrer reference taxpayer standing in any regard.

---

[7] The authorities on which appellants rely are either inapposite (*People v. Majors* (2004) 33 Cal.4th 321, 322 [threat to arrest victim established "either the force or the fear prong of the kidnapping statute"]), or are nonbinding and in conflict with state and federal authorities. (Compare *Cuviello v. City & County of San Francisco* (N.D.Cal. 2013) 940 F.Supp.2d 1071, 1102 ["[t]hreat of arrest suffices to demonstrate 'threats, intimidation, or coercion' under the Bane Act"], with *Gant v. County of Los Angeles* (2014) 594 Fed.Appx. 335, 337 [requiring "'a showing of coercion independent from the coercion inherent in the wrongful detention itself'"].)

[8] The operative complaint alleged appellants resided and/or paid taxes in the County of Los Angeles, not the City of Los Angeles.

The failure of appellants to raise this theory of standing below forfeits their contention on appeal. "[F]airness is at the heart of a waiver claim. Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] . . . Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178; see *Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649 ["[t]he critical point for preservation of claims on appeal is that the asserted error must have been brought to the attention of the trial court"].) This is particularly true where, as here, "the new theory depends on controverted factual questions whose relevance thereto was not made to appear at trial." (*Bogacki v. Bd. of Supervisors* (1971) 5 Cal.3d 771, 780.)

While we recognize appellants' ability to "'advance on appeal a new legal theory why the allegations of the [complaint] state a cause of action'" (*Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 259), any new theory must be advanced with relevant legal authority and reasoned analysis. (*Golightly v. Molina* (2014) 229 Cal.App.4th 1501, 1519.) Appellants cite no California cases and furnish no analysis on their ability as county taxpayers to pursue legal action against a municipality in which they may or may not reside. (See *Torres v. City of Yorba Linda* (1993) 13 Cal.App.4th 1035, 1041–1043 [county residents failed to establish taxpayer standing for claims against city].)

20

The only authority on which appellants rely, *Flast v. Cohen* (1968) 392 U.S. 83, provides "a 'narrow exception' to 'the general rule against taxpayer standing'" in actions pursued in federal court. (*Arizona Christian School Tuition Organization v. Winn* (2011) 563 U.S. 125, 138.) Appellants purport to invoke *Flast* without any discussion of its application to state proceedings. In addition, appellants provide no discussion of any of the conditions required for taxpayer standing under *Flast*. (See *Chodosh v. Commission on Judicial Performance* (2022) 81 Cal.App.5th 248, 268 [discussing taxpayer standing under state law]; *Winn*, *supra*, at pp. 138–139 [plaintiffs must establish two "conditions" for *Flast* standing].) We therefore deem this contention forfeited.

**D.    Leave to Amend**

Appellants have neither addressed the court's denial of leave to amend, nor suggested how they could amend the complaint to cure any deficiency. The burden of proving a reasonable possibility any defect in the complaint can be cured by amendment is squarely on the plaintiff. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) Appellants have not met this burden. (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 [plaintiffs must show in what manner they can amend the complaint "and how that amendment will change the legal effect" of their pleading].) We therefore affirm the court's denial of leave to amend.

21

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

MORI, J.

We concur:

CURREY, P. J.

COLLINS, J.